UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNNELLE AVIS HARRIS, | Case No. 5:17-cv-02204-SHK |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Lynnelle Avis Harris ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying her application for disability insurance benefits ("DIB"), under Title II of the Social Security Act (the "Act"). This Court has jurisdiction, under 42 U.S.C. § 405(g), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

/ / /

# I.    BACKGROUND

Plaintiff filed an application for DIB on September 9, 2013, alleging disability beginning on December 1, 2011.  Transcript ("Tr.")[1] 149-56.[2]  Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on April 19, 2016, Plaintiff, who was represented by her attorney Melissa Steele, appeared at a hearing before ALJ Joseph P. Lisiecki, III.  Tr. 31-51.  On April 28, 2016, ALJ Joseph P. Lisiecki, III, determined that Plaintiff was not disabled.  Tr. 18-25.  Plaintiff sought review of the ALJ's decision with the Appeals Council ("AC"), and submitted additional evidence and an optional brief to the AC in support of her request for review.  Tr. 146-48, 258-77.  Even though the AC stated that it "considered the reasons [to the AC] and exhibited them" and "found that the reasons do not provide a basis for changing the [ALJ's] decision[,]" the AC stated that it denied the request for review on September 12, 2017.  Tr. 1-7.  This appeal followed.

# II.    STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted).  In reviewing the

---

[1] A certified copy of the Administrative Record was filed on March 28, 2018.  Electronic Case Filing Number ("ECF No.") 16.  Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

[2] The parties allege in the Joint Stipulation that Plaintiff also applied for supplemental security income ("SSI").  ECF No. 17, Joint Stipulation at 2.  The parties and the ALJ all list Plaintiff's application date as September 6, 2013.  Id.; Tr. 18.  The record, however, reveals that Plaintiff applied for DIB only and the Plaintiff submitted her DIB application on September 9, 2013.  Tr. 149-56.

Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196)); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing." (citation omitted)). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

## III.    DISCUSSION

### A.    Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

3

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C.
§ 423(d)(2)(A)).  "If a claimant meets both requirements, he or she is 'disabled.'"
Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a).  Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps."  Tackett, 180 F.3d at 1098; 20 C.F.R. § 404.1520.  The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five.  Tackett, 180 F.3d at 1098.

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]?  If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB].  If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.  See 20 C.F.R. § 404.1520(b).

Step 2.  Is the claimant's impairment severe?  If not, then the claimant is "not disabled" and is not entitled to [DIB].  If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.  See 20 C.F.R. § 404.1520(c).

Step 3.  Does the impairment "meet or equal" one of a list of specific impairments described in the regulations?  If so, the claimant is "disabled" and therefore entitled to [DIB].  If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step

three and the evaluation proceeds to step four.  See 20 C.F.R.
§ 404.1520(d).

Step 4.  Is the claimant able to do any work that he or she has
done in the past?  If so, then the claimant is "not disabled" and is not
entitled to [DIB].  If the claimant cannot do any work he or she did in
the past, then the claimant's case cannot be resolved at step four and
the evaluation proceeds to the fifth and final step.  See 20 C.F.R.
§ 404.1520(e).

Step 5.  Is the claimant able to do any other work?  If not, then
the claimant is "disabled" and therefore entitled to [DIB].  See 20
C.F.R. § 404.1520(f)(1).  If the claimant is able to do other work, then
the Commissioner must establish that there are a significant number of
jobs in the national economy that claimant can do.  There are two ways
for the Commissioner to meet the burden of showing that there is other
work in "significant numbers" in the national economy that claimant
can do: (1) by the testimony of a vocational expert [("VE")], or (2) by
reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404,
subpt. P, app. 2 [("the Listings")].  If the Commissioner meets this
burden, the claimant is "not disabled" and therefore not entitled to
[DIB].  See 20 C.F.R. §§ 404.1520(f), 404.1562.  If the Commissioner
cannot meet this burden, then the claimant is "disabled" and therefore
entitled to [DIB].  See id.

Id. at 1098-99.

**B.      Summary Of ALJ's Findings**

The ALJ determined that "[Plaintiff] last met the insured status
requirements of the . . . Act through December 31, 2014."  Tr. 20.  The ALJ then
found at step one, that "[Plaintiff] did not engage in [SGA] during the period from

her alleged onset date of December 1, 2011 through her date last insured of December 31, 2014 (20 C.F.R. 404.1571 et seq.).” Id.

At step two, the ALJ found that “[t]hrough the date last insured, [Plaintiff] had the following severe impairments: fibromyalgia/chronic pain, migraine headaches, sinus tachycardia, and abdominal pain (20 CFR 404.1520(c)).” Id. At step three, the ALJ found that “[t]hrough the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in [the Listings].” Id.

In preparation for step four, the ALJ found that through the date last insured, Plaintiff had the residual functional capacity (“RFC”) to:

> perform a range of light work as defined in 20 CFR 404.1567(b) as follows: [Plaintiff] could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; could stand and/or walk for a total of six hours, and sit for a total of six hours, in an eight-hour workday with normal breaks; could perform occasional postural maneuvers but could not use ladders, ropes or scaffolds; and was precluded from work at unprotected heights and from concentrated exposure to excessive changes in temperature or light, extremes of heat or cold, concentrated noise, and vibration.

Tr. 21. Then, at step four, the ALJ found that “[t]hrough the date last insured, [Plaintiff] was unable to perform any past relevant work [(“PRW”)] (20 CFR 404.1565).” Tr. 23.

In preparation for step five, the ALJ noted that “[Plaintiff] . . . was 52 years old, which is defined as a younger individual age 18-49, on the date last insured. [Plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).” Tr. 24. The ALJ also noted that “[Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).” Id. The ALJ then found that “[t]ransferability of job skills is not material to the

determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is not disabled, whether or not [Plaintiff] has transferable job skills ([s]ee SSR 82-41 and CFR Part 404, Subpart P, Appendix 2)." Id. (internal quotation marks omitted).

At step five, the ALJ found that "[t]hrough the date last insured, considering [Plaintiff's] age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed (20 CFR 404.1569, 404.1569(a))." Tr. 24. Specifically, the ALJ found that Plaintiff could perform the "light exertional level" occupations of "Packer" as defined in the dictionary of occupational titles ("DOT") at DOT 920.687-166, with 298,000 jobs in the national economy, and "Bench Assembler: DOT #706.684-022[,]" with 175,000 jobs in the national economy. Tr. 25.

The ALJ, therefore, found that "[b]ased on the testimony of the [VE], . . . through the date last insured, considering [Plaintiff's] age, education, work experience, and [RFC], [Plaintiff] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." Id. The ALJ concluded that "[Plaintiff] was not under a disability as defined in the . . . Act, at any time from December 1, 2011, the alleged onset date, through December 31, 2014, the date last insured (20 CFR 404.1520(g))." Id.

**C.    Issue Presented**

In this appeal, Plaintiff raises only one issue, "[w]hether the ALJ decision has the support of substantial evidence at step five of the sequential evaluation process." ECF No. 17, Joint Stipulation at 4.

**1.    Plaintiff's Argument**

Plaintiff argues that the ALJ's step five finding was not supported by substantial evidence because the occupations identified by the VE have an "apparent conflict" with County Business Patterns ("CBP") and the Occupational

Outlook Handbook ("OOH") "both as to job numbers and as to typical job requirements." Id. at 10-11.

With respect to the ALJ's finding that Plaintiff could perform work as a packer (DOT 920.687-166) with 298,000 jobs nationally, Plaintiff first argues that substantial evidence does not support a finding that 298,000 jobs exist nationally for this occupation because the CBP and OOH indicate that far fewer jobs exist. Id. at 6. Specifically, Plaintiff submits that "[t]he DOT classifies the occupation at code numbered 920.687-166 as a shoe packer in the boot and shoe industry" and according to the CBP, as of March 2015, there were only 11,808 people employed nationally "in every single occupation within the [footwear manufacturing] industry from the Chief Executive Officer to the night janitor." Id. Plaintiff also submits that according to the OOH, "packers and packagers, hand[,] represent 500 jobs in an industry subsector that includes the discrete industry of footwear manufacturing." Id. at 7.

Plaintiff also argues that the amount of standing required of a of packer, exceeds the amount of standing that the ALJ opined Plaintiff could perform in the RFC assessment. Id. at 8. Plaintiff submits that the Department of Labor's "Occupational Information Network (the replacement for the DOT) (O*NET OnLine) . . . reports that 92% of packers and packagers, hand[,] spend time standing continually or almost continually during a workday and that 8% of packers and packagers, hand[,] spend time standing more than half the time." Id. (citations omitted). Plaintiff argues that "[w]hen the Department of Labor describes an occupational group as standing continually or almost continually [in] 92% of jobs, that description necessarily eliminates 92% of jobs as standing or walking not more than six hours in an eight-hour day." Id.

Plaintiff asserts that although she did not raise these issue at the administrative hearing, "[b]ecause [she] presented the O*NET OnLine data directly to the [AC], it is subject to review by this court under Brewes, Taylor, and

Shaibi." Id. (citing Tr. 262; <u>Brewes v. Comm'r Soc. Sec. Admin.</u>, 682 F.3d 1157 (9th Cir. 2012); <u>Taylor v. Comm'r Soc. Sec. Admin.</u>, 659 F.3d 1228 (9th Cir. 2011); <u>Shaibi v. Berryhill</u>, 883 F.3d 1102 (9th Cir. 2018)). Plaintiff also asserts that pursuant to 20 C.F.R. sections 404.1566(d)(2) and 404.1566(d)(5), the Commissioner takes administrative notice of the OOH and CBP. <u>Id.</u>

With respect to the ALJ's finding that Plaintiff could perform work as a bench assembler (DOT 706.684-022), Plaintiff argues that substantial evidence does not support a finding that 175,000 jobs exist nationally for this occupation because, again, the OOH reports that far fewer jobs are available nationally for this occupation. <u>Id.</u> at 10. Plaintiff begins by noting that the DOT classifies the occupation at DOT 706.684-022 as that of a small products assembler I, and lists the typical job duties for this occupation as "performing a combination of repetitive tasks to mass produce products such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors." <u>Id.</u> at 8-9 (citing DOT 706.684-022).

Plaintiff then submits that an O*NET OnLine DOT Crosswalk Search for 706.684-022, reveals that "[t]he occupation of small products assembler I belongs to the broader classification of production workers, all other" and that the entire occupational group of "production workers, all other[,]" has 236,000 jobs nationally. <u>Id.</u> at 9-10 (citation omitted). Plaintiff adds that "[t]he occupation of a bench assembler, or small products assembler I, manufacture parts" and that "the entire manufacturing sector represented 105,000 jobs in the national economy as of 2014." <u>Id.</u> at 10 (citation omitted). Plaintiff submits that within the manufacturing sector, the two specific occupations of "[m]achinery manufacturing" and "[c]omputer and electronic product manufacturing" require similar job duties to those required in the bench assembler I occupation listed in the DOT at 706.684-022, and that according to the OOH, these two occupations have only 3,000 and 7,400 jobs nationally. <u>Id.</u> Plaintiff, therefore, argues that because the OOH

9

employment projections, which the Commissioner takes administrative notice of, do not amount to a significant number of jobs available nationally, and because the OOH data contradicts the VE's testimony that 175,000 of such jobs exist in the national economy, the ALJ's step five finding that relies on the VE's testimony, cannot stand. Id.

### 2. Defendant's Response

Defendant argues that "the ALJ was not required to affirmatively investigate whether conflicts existed between the VE's testimony and vocational sources other than the DOT" and "[e]ven if Plaintiff could present alternative job numbers that appeared reliable, . . . [t]he [VE's] testimony was substantial evidence in support of the ALJ's step five findings." Id. at 12 (citations omitted). Defendant adds that "Plaintiff's attorney is not a vocational expert and his lay interpretation of the vocational information he provided simply has no comparative or reliable value." Id. at 14. Finally, Defendant asserts that "courts within this district have determined that even if conflicting job numbers evidence exists, the ALJ's decision must be upheld based on existing VE testimony." Id. at 14-15 (citations omitted).

### 3. Plaintiff Did Not Forfeit Her Challenge To The VE's Job Numbers.

It is a "fundamental principle that an agency, its experts, and its [ALJ's] are better positioned to weigh conflicting evidence than a reviewing court." Shaibi, 883 F.3d at 1110; see also Cardone v. Colvin, No. ED CV 13-1197-PLA, 2014 WL 1516537, at *6 (C.D. Cal. April 18, 2014) (citing Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) ("when the record contains ambiguous or conflicting evidence, the Administration is responsible for resolving the conflict."). "[W]hen a claimant fails entirely to challenge a [VE's] job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel." Shaibi, 883 F.3d at 1109 (footnote omitted). Specifically, "challenges based on an alleged conflict with alternative job

10

numbers gleaned from the CBP or the OOH" will be waived if not challenged during the administrative proceedings. Id. However, "[i]ssues raised to the [AC] but not to the ALJ are not forfeited." Albritten v. Berryhill, No. CV 17-0925-JPR, 2018 WL 3032860, at *3 (C.D. Cal. June 14, 2018) (citing Lamear v. Berryhill, 865 F.3d 1201, 1206 (9th Cir. 2017)); Ross v. Comm'r Soc. Sec. Admin., No. 6:16-cv-00903-AA, 2018 WL 263639, at *2 (D. Or. Jan 2, 2018)); see also Brewes, 682 F.3d at 1163 (citation omitted) ("we have routinely considered evidence submitted for the first time to the [AC] to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence.").

Here, it is undisputed that Plaintiff was represented by counsel at the administrative hearing. See Tr. 33 (the hearing transcript indicating that "[Plaintiff] appeared in person and was represented by her attorney, Melissa Steele."). It is also undisputed that Plaintiff's attorney did not raise the issue of job number concerns to the ALJ at the administrative hearing. See Tr. 50-51 (Plaintiff's attorney declining invitations by the ALJ to question the VE about the VE's testimony or to add any "closing comments" before going off the record at the end of the administrative hearing). Plaintiff, however, did raise the alleged conflict with alternative job numbers gleaned from the CBP and the OOH to the AC and submitted evidence to the AC in support of the challenge, which the AC considered and made part of the administrative record that is before before this Court. Therefore, unlike the plaintiff in Shaibi, who forfeited the issue of alternative job numbers gleaned from the CBP and the OOH for district court review by failing to raise the issue at any time during the administrative proceedings, Plaintiff preserved the issue for district court review in this case by raising the issue to the AC during the administrative proceedings. Accordingly, Plaintiff has not forfeited her challenge to the VE's job numbers here.[3]

---

[3] As discussed in Shaibi, a claimant wishing to preserve the issue of inconsistencies between job numbers listed in the DOT and those listed in the CBP and OOH, could also do so by "rais[ing]

## 4.    Substantial Evidence Does Not Support The ALJ's Decision.

Here, when considering the record as a whole, including the additional evidence Plaintiff submitted to the AC, the ALJ's step five finding—that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed—is not supported by substantial evidence.

Specifically, contrary to the ALJ's finding that there were 473,000[4] jobs nationally that Plaintiff could perform, as discussed above, the CBP and OOH data that Plaintiff submitted to the AC, and that the AC made part of the record, suggests that there could be as few as 500 packer jobs and 10,400[5] bench assembler jobs nationally available.  The Agency takes administrative notice of the CBP and OOH and the Court must consider this evidence because the AC made it part of the administrative record. See 20 C.F.R. § 404.1566(d) (the Agency "will take administrative notice of reliable job information available from various governmental publications . . . [including] (1) [the DOT], published by the Department of Labor; (2) [the CBP], published by the Bureau of the Census; . . . and (5) [the OOH], published by the Bureau of Labor Statistics."); see also Brewes, 682 F.3d at 1163 (citation omitted) (emphasis added) ("when the [AC] considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."). Moreover, Plaintiff presented evidence suggesting that ninety-two percent of the

---

the job-numbers issue in a general sense before the ALJ" and later "submit[ting] supplemental briefing or interrogatories contrasting the VE's specific job estimates with estimates of the claimant's own."  Shaibi, 883 F.3d at 1110.

[4] 473,000 is the sum of the 298,000 packer jobs and 175,000 bench assembler jobs the ALJ opined Plaintiff could perform.

[5] 10,400 is the sum of the 3,000 and 7,400 machinery manufacturing and computer and electronic product manufacturing jobs listed in the OOH employment projections.

500 nationally available packer jobs likely exceed her RFC limitation of standing for only up to six hours per day, because the jobs require constant or almost constant standing.

Accordingly, because the evidence that Plaintiff submitted to the AC suggests that there are fewer than 11,000 jobs nationally that Plaintiff could perform, the Court finds that the ALJ's step five finding—that a significant number of jobs existed in the national economy that Plaintiff could have performed—is not supported by substantial evidence.  See Gutierrez v. Comm'r Soc. Sec. Admin., 740 F.3d 519, 529 (9th Cir. 2014) ("finding that 25,000 national jobs is sufficient [but] presents a close call.").  As such, remand for further proceedings is necessary.  Batson, 359 F.3d at 1193.

## IV.    CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).  See Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." (citation and internal quotation marks omitted)).  The Clerk of Court is directed to serve copies of this Order on counsel for both parties.

IT IS SO ORDERED.


DATED:  7/20/2018                          _____

HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge

13